Good morning. Good morning. Good to see you again. Nice seeing you. Can you hear me? Sure. Great. So I am, this is Josephine Gerard and I represent Christopher Jones and again this is a very procedural situation where my client has dementia and in 2008 he was working in a he felt like he had migraines and that there was some chemical problem in the plant and he began, he took off time but he still couldn't keep working because of the pain. So he applied for disability, was denied, he didn't know he could appeal and this case is very important to the court because if we don't keep with the commissioner's regulations this is just going to repeat. If a person has dementia and they can't remember where they were the court, as in Sims, says that, that's the Supreme Court case saying that this is not adversarial, this is a case where the court, the administrative judge has a duty to develop the case. So what happened in this case was, I'm sorry. Well, forgive me for interrupting, but it would be helpful for me if I could figure out what your position is on what triggers the duty to develop the case. The opposing counsel argues that there wasn't the diagnosis within the covered period and so this duty didn't develop. So could you back up and address that threshold issue, please? Okay. So when there's a mental impairment, when a, there's actually a duty overall in Armstrong to develop the case. And the ALJ has a deck of cards in order to do that. They can get a consultation examination, they can subpoena the doctors, they can ask for more evidence, keep it open. The ALJ is responsible. I don't think that you're answering Judge Christian's question. I'm sorry. Isn't a threshold predicate to the duty to develop a case to show that there was an impairment demonstrable by medically acceptable clinical and laboratory diagnostic techniques during the period of coverage? I think the ALJ found that there was an impairment. That's the opposite. Well, okay. The ALJ splits the case in half. I was trying not to get too complicated. There's Title II. He's insured up until a month before he applies. Are you arguing that it shouldn't have been bifurcated? It should not have been bifurcated. There's an overlapping time period, same onset date, 2008. All the evidence that the social... Let me do it this way. That's helpful. That was a yes or no. I got your answer and appreciate that. If the ALJ had considered all of the evidence, was there any diagnosis or medical record that indicated that this disability had an onset date during the covered period? Well, he has severe dementia. That was a yes or no question. That is Dr. Gardner. That's, I think, 218. But that was not considered in the ALJ's decision because what happened is the ALJ sent out for a consultative exam, but a month after he sends him out, he makes the decision. So that consultative examination was not considered by the ALJ. So your argument really is hinged upon, in this case, the decision to what I'm calling bifurcate, which is not really a term of art, but you think that was the critical error? It was a critical error. Because the ALJ's determination is about the onset date. That's what, there has to be medical evidence to determine what the onset date is. And the ALJ was determining, or I shouldn't conjecture, but whether there would be an award based on the onset date. So what he's saying is, well, there's no evidence as of a month before this application, but I'm going to send you for an onset, an evaluation. What does that consultative examiner, does this, because medical records are retrospective. This was a standardized test for dementia. He's got severe dementia. The examiner, the psychologist, who's the only person who's allowed to make an evaluation on mental illness, could have said, oh, no, it can develop in a year, or it could have happened just this month. But there was no evidence, no questioning, and not even discussing that doctor's opinion. So the commissioner paid for the 2008, 2000 Dr. Gardner's report. It needed to be considered, and you can bifurcate a case where there's no overlapping period, but his Title II and his low income SSI, it's for the same period. It's just whether there were awards benefited, and that's done later by the DDS. That's not done by the ALJ. That's all done after the ALJ's decision. ALJ's decision needs to be based on evidence. There's no evidence, because in the medical report, they said, I don't have enough evidence to make a decision. The ALJ has to use evidence, so that is the problem. There is evidence, and there's also a 2008 application that the commissioner had that no one else had. And in this particular case... Yes, yes. The social worker states that he takes him to medical treatment every two weeks. You know what the government is going to say in rebuttal to that argument, don't you? So why don't you tell us? The commissioner is going to say, that's third party evidence, that's not medical evidence. But the commissioner has in their own regulations, this comes up. People have dementia, have brain trauma, they don't know what's happening. So at home, you can go to a doctor, but the doctor only sees you maybe half an hour, 45 minutes. Your daily living and what you're doing and how you're acting, it's important evidence for Social Security. And it's a non-adversarial situation. The mother talks about him actually being psychotic. He cannot rely on Mr. Jones' given statements, but he is not aware. He has trouble counting, he has trouble spelling, he cannot remember the past. Do you think there's any problem because only the mother and social worker and not other evidence, some other expert would say what the situation was? I gather you know what you just... So what else is there? When you look and see, what else is there? There's nothing. Well, there's a perspective here. This is a small town, Coeur d'Alene, there's only two places that serve the homeless. He's homeless for eight years. The social worker says he takes him every two weeks. The problem here was the 20 pages of medical records were just what Mr. Jones said, I go to the trailer for health care, and they only got those records as of that date that he talked about. Rather than, there's missing records, just evidentiary. He's applied 2008, he has migraines, he's getting migraine medication. There's obviously a duty to develop that, even just by asking whether the dementia, how long can chronic severe dementia, you only have to do 50... You cited Dr. Gardner as a source of possible information as to how long-standing the depression and dementia was, right? Right, because the standard... But he described Jones' ongoing mild depression, but he gave no time frame as to when Jones may have experienced depressive episodes in the past. He wasn't asked that, and he was just asked to evaluate... He wasn't asked to evaluate the... He only evaluated by testing him in that... Where is the evidence that there was this incapacity or disability during the insured period? Well, the commissioner has the 2008 application. It is an application which was denied. Right, right, but we don't have that. There would be more medical evidence. It's just that there is medical evidence. There is a clinic that he went to, because Christopher Green, the social worker, has said that for the last eight years, he's taking him every two weeks to a medical center. He takes him to his medical appointments. So if he's taking him to his medical appointments, there's more than... So your position as the ALJ on that basis should find out... Yeah, there's only two clinics in Idaho, and it states on the top of the first set of... I better reserve my time. May it please the Court, Jordan Goddard appearing on behalf of the Commissioner of Social Security. Good morning, Your Honors. I'd like to start off by addressing this claim of dementia, one that first appears in the reply brief by Jones, and has been repeated multiple times here in this argument. The evidence that Jones is relying on doesn't actually support this conclusion at all. If we look at Dr. Gardner's report, what Dr. Gardner actually says is that he administered testing, and the testing resulted in a score that fell in the range of dementia, 17 out of 30, a very extreme degree of limitation. But then Dr. Gardner goes on to question the validity of that testing, pointing out that there are inconsistencies when you look at the individual subtests, and then he ultimately declines to diagnose dementia. If you look at the last page of his report, the diagnoses he makes are actually suspected mild neurocognitive disorder. That is not dementia. Dementia is a very serious condition, and the other diagnosis is an unspecified mood disorder. Unspecified, according to the American Psychological Association, means that there's not enough information for the clinician to make a firm diagnosis. He then follows it by saying that Jones has said he has moderate, has described moderate symptoms, and has said that he had more severe symptoms at some unidentified point in the past. So if you read Dr. Gardner's opinion holistically, he does not conclude that Jones has dementia. He concludes that test results are questionable, indicating that he has dementia, and Dr. Gardner ultimately declines to diagnose dementia, or endorse any sort of impairment during the relevant period. Mr. Gardner, would you address the last point made by Ms. Gerard, which is that the ALJ should have back in, I guess, based on the 2008 application which was denied, should have investigated the only two clinics in Coeur d'Alene which provided services? Well, the first point I would make on that is that this was actually raised with Jones's attorney. Jones was represented at the hearing, and the ALJ brought up this lack of medical records, and the inability of the agency to find these medical records, and asked the attorney, are there more medical records that we should be aware of, that we should be pursuing? His answer was, no, not that I'm aware of. Right, which is why I find it curious that you seem to be making, your opening argument is a different argument than your primary argument in your briefing, which was the absence of diagnosis. But you started this morning by talking about Dr. Gardner's report. So is the government changing its position? I'm sorry for the confusion, Your Honor. No, I just wanted to address the dementia claim that had been made multiple times, to sort of get that off the table. I apologize for sidetracking. That's okay. What's your primary argument? Sorry, on what issue? The development issue? My understanding of the government's brief is that you're in position. Coming into argument today was that there wasn't a diagnosis within the covered period, and so the contention that the record needed to be further developed wasn't triggered. That's why I ask questions about what triggers this duty. Was there a diagnosis within the relevant period? And I'm familiar with the part of the record where the ALJ asked the counsel, are there more records? And the counsel said no. So that's why I'm a little puzzled by your position today. Perhaps I'm misunderstanding something. I apologize for getting down into the weeds instead of starting with the big picture where I should have. Our position is that there was no medically determinable impairment established. I would just, I would. During the covered period, right? For the covered period, yes. So opposing counsel's argument is that there was an error, and I appreciate that. Thank you. That helps me get back in the right galaxy. Opposing counsel's arguing that there shouldn't have been a bifurcation here. Before you get to Dr. Gardner's report, can you explain to that or speak to that, please? Yes, Your Honor. There absolutely should have been a bifurcation. I would point out that, again, this was raised specifically at the hearing, and Jones's attorney was given the opportunity to submit briefing on the question of whether the claim should be bifurcated or not. His briefing that he submitted 10 days later was all of two sentences, and it said, yes, there should be a bifurcation. Right. So Jones is now changing his position here on appeal as opposed to what it was at the hearing. That's the way it looks to me, and that's why I'm trying to struggle with this procedurally, why we're even getting to Dr. Gardner's report, because that came later, right? I agree that Dr. Gardner's report should not be considered substantively. I just wanted to address the dementia issue. Okay. That's fine. But now I understand what your position is. It sounds like you're not abandoning your original argument, so I appreciate that clarification. Not at all, Your Honor. Yes, this was correctly done as a bifurcation. There are no overlapping periods between the two applications, and that is the important element here. Even though on the SSI claim Jones identified an onset date back in 2008, when it comes to SSI, it's important to understand that the relevant period isn't the date identified for onset, like in a Title II claim. This is kind of where the primary difference between these two different titles comes in. You are only eligible for disability benefits under SSI as of the date you file your application. And Jones filed that application in September 2014, nine months after the close of his insured status for Title II. So there's actually a nine-month gap between the relevant periods at play here. There is no overlapping period that had to be addressed. And so under those circumstances, the regulations are clear that these are not related claims and should have been bifurcated, as Jones' attorney correctly acknowledged after the hearing. I would also like to point out that Jones' social worker did not actually claim that he had been taking Jones to medical appointments for eight years every other week. His statement is rather brief, and he says that he has known Jones for a long time, and he refers to taking him to medical appointments, though this is after some of the medical records we have in the file. So there's no reason to believe that the social worker was referring to any sort of medical visits other than what we already have. And when we look at the medical records that we have, which are close in time to the relevant period, which the AOJ did and should have done, they consistently show mental status examinations that are completely normal. No abnormalities of mood, affect, or thought disorders. So while his application contains a statement from his mother describing extreme symptoms of psychosis, there is no medical evidence to support that, whether it be from Mr. Byrne, the physician assistant who was administrating this care, or even, I hate to go to Dr. Gardner again after acknowledging that this was not really before, that this was properly not included in the record, but that report, there's nothing in the administrative record or the materials that Jones submitted to the district court that support the idea that he has psychosis, at least not from anyone who is qualified to make such a diagnosis. And the mother is describing extreme symptoms, talking about how he is communicating with aliens and believes he's a religious figure. But whenever he goes in to see a qualified medical professional who could make these kind of evaluations, there's no hint of that. The mental status examination reports consistently say no abnormalities of thought, thought disorder, or other related abnormalities. So the ALJ correctly found that based on the evidence in the record, that Jones failed to establish the existence of a medically determinable impairment. And under the statute, if you don't have a medically determinable impairment, the analysis stops right there and you cannot qualify for disability benefits. Therefore, if there are no further questions, I ask this court to affirm the district court's judgment. Thank you very much. Ms. Goddard, do you want a minute to rebut? So the commissioners just stated incorrectly Title II and Title SSI are dependent on the onset date. The date of payment, you only get a year previously on Title II, and you get the date of application. The judge makes a determination on the date of the onset. It's sort of overall, as far as the attorney waiving the rights, the attorney said he did not, from what he knew by interviewing, there were no records, because Christopher Jones has dementia. And he's not normal. And as far as the standardized testing of Dr. Gardner, that's ambiguous. That's outside of this record. We could ask, but he did not make a determination that he's fine. He gave a mini-mental and said he can't spell, he can't concentrate, and he's not functional. And that's in Dr. Gardner's report. Point us to some medical evidence in the record that supports the causes. Well, the problem is he's going to a homeless clinic and he goes in and out and gets whatever treatment. He felt he needed further treatment. He couldn't get treatment because he didn't have medical coverage. So we have 20 pages of just ambiguous not much. And we have Dr. Gardner, a psychologist, interviewing him and saying he needs cognitive, which is different from dementia. He needs cognitive examination. Because I think the record says that Dr. Gardner said that although he has all this, they don't indicate dementia. He said that one part, that one test he took looked like it was unusual to have dementia and be able to take that little test. But no, he doesn't say that the evaluation is wrong. That's why I ask you, if you can, report it, point us to the medical evidence that says he has dementia. The standardized test, if you look on the standardized test, 17 out of 30, it's objective testing. 15 out of 30 is dementia. 17 out of 30 is severe dementia. And that's what is on that test. And he does not say this test is not valid. There's no, I didn't read that that way, if the justices did. And I didn't see any of that, and I wouldn't have discussed it much if it had. But it's a valid test. It's standardized. So he gave it to him. And during the hearing and the conversation, Christopher's very coherent on the small reality that he deals with. He is not going to burst into psychotic things. Because it's over a long period of time. He focuses and straight and narrow in the area that he can. So your point is that the standardized test rebuts Dr. Gardner's conclusion? No, Dr. Gardner concludes that he needs more testing just for cognitive, like maybe he has a brain tumor or maybe this testing. But the dementia is, yeah, dementia.
judges: Farris, Bea, Christen